IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ALEXIS DOCTOR
PETITIONER

v C.A. 05-424ML

ASHBEL T. WALL II
DIRECTOR OF CORRECTIONS

**PETITIONER'S OBJECTIONS TO THE STATE'S ANSWER IN RESPONSE TO PETITIONER WRIT OF HABEAS CORPUS 28 U.S.C. §2254 AND MEMORANDUM IN SUPPORT OF WRIT**

NOW COMES the petitioner, Alexis Doctor, pro se, In the above entitled-action moves this Honorable Court pursuant to applicable rule in the United States District Court for the District of Rhode Island. Petitioner, objects to the **State's Answer/and Motion to Dismiss** as follows:

The Rhode Island Superme Court's opinion fails to address the claims raised by petitioner in several different aspects in determining petitioner's issues that are in violation of the United States Constitution, and Federal and State Constitution:

**EXHAUSTION:**

I, Alexis Doctor, pro se believe to the best of my ability that I have complied with the requirements of exhausting two (2) of my claims that went before the Rhode Island Supreme Court pursuant to 28 U.S.C. §2254.

**UNEXAUSTED:**

As for the remaining two (2) claims petitioner only became aware of ground (B) set forth in habeas petition after reading co-defendants appointed counsels brief. Which was well after petitioner argued ground (1) and (3) in the State Supreme Court.

As for ground (4) petitioner believes this issue was argued at length and exhausted in my post-conviction relief proceeding and was Appeal to the State Supreme Court, but was wrongfully argued under newly discovered evidence when the evidence was shown to be available to trial counsel and could have been presented in petitioner (1995) trial, failure to investigate this evidence supports petitioners claim of ineffective assistance of counsel.

Petitioner urges this Court to review these claims pursuant to Statutory exceptions section §2254 (b)(1)(B) of the Judicial code which excuses a petitioner from exhaustion "if there is an absense of an available state corrective process. See, **State v DeCiantis**, 813 A.2d at 992-993 (R.I. 2003).(In addition, **DeCiantis** has waived any right he may have had to seek post-conviction relief based on the denial of his right of allocution. Even were we to assume, without deciding, that **DeCiantis** could have raised this issue in the first post-conviction-relief application that he filed in 1985, he failed to do so. Once he failed that application and litigated it to judgment without challenging the legality of his sentence, "[a]ny ground***not so raised***may not be the basis for a subsequent application.)

In this case, petitioner is procedually barred from filing a new application for post-conviction-relief. See, **Carsetti v Maine**, 932 F.2d 1007, 1011 (1st Cir. 1991)(claim exhausted despite failure to raise it in state post-conviction proceedings because petitioner is now "procedually barred" from raising claim in "new action for post-conviction relief in state court"); **Henderson v Sargent**, 926 F.2d 706 (8th Cir.), vac'd in part on other grounds, 939 F.2d 586 (8th Cir. 1991), cert. denied, 502 U.S. 1050 (1992)(claim exhausted because petitioner's procedural default at state post-conviction stage precludes further use of state remedies). At bar, petitioner no longer has any available remedies in state court as set forth in **DeCiantis**, Id. at 993. Also, **Wilkson State Crime Laboratory Com'n**, 788 A.2d 1129, 1131 n1 (R.I. 2002), the State Supreme Court explained that issues not presented in the appellate briefs are deemed waived. See, also R.I.G.L. §10-9.1-8:

> "all grounds for relief available to an applicant at the time he or she commences a proceeding under this [post-conviction relief] chapter must be raised in his or her original, or supplemental or amended, application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds that in the interest of justice the applicant should be permitted to assert such ground for relief.").

At bar, petitioner's issues derived from ineffective assistance of counsel. **Nix v Whiteside**, 475 U.S. 157, 163 n3 (1986); **Duckworth v Serrano**, 454 U.S. 1, 3 (1981)(exception applies when "corrective process is so clearly deficient as to render futile any effort to obtain relief"). Also, **Chacon v Wood**, 36 F.3d at 1467-68 ("A habeas petitioner may, however, reformulate some what the claims made in the state court; exhaustion requires only that the substance of the federal claim be fairly presented); **Williams v Holbrook**, 691 F.2d 3, 6 (1st Cir. 1982)(petitioner "not precluded from some reformulation of the claims made in the state courts").

Finally, in the interest of justice petitioner request that this court review these issues that are worthy of consideration for a hearing to determine the substance of these issues, and if this court determine that these issues (2) and (4) have not been exhausted pursuant to **Rhines v Weber**, 125 S.Ct. 1528, 1535 (2005) petitioner will request that these issues be deleted from grounds (1) and (3).

**AEDPA STANDARD:**

See, **O'Brien v Dubois**, 145 F.3d at 23. (1st Cir. 1998) Under Antiterrorism and Effective Death Penalty Act (AEDPA) provision governing habeas court's review, which requires habeas court to issue the writ when state court produced "decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, habeas court asks first whether Supreme Court has prescribed rule that governs petitioner's claim, and if so, habeas court gauges whether state court decision is "contrary to" governing rule, but, in absense of governing rule,"contrary to" clause drops from equation and habeas court determines whether state court's use of, or failure to use, existing law in deciding petitioner's claim involved "unreasonable application" of Supreme Court precedent. 28 U.S.C. §2254(d)(1).

In the case at bar, petitioner has set forth specific facts that are in dispute with the state finding and by showing that there are genuine issues worthy of a evidentiary hearing. **Townsend v Sain**, 83 S.Ct. 745 (1963) provision rendering the presumption of correctness inapplicable if "a consideration of (the pertinent) part of the record as a whole" which showed that the factual determination is not fairly supported by the record, (**Townsend**. supra. 372 U.S. at 313)(This court has consistently held that state factual determinations not

fairly supported by the record cannot be conclusive of Federal Rights, **Townsend**. supra 372 U.S. at 316 Id); **Fiske v Kansas**, 274 U.S. 380, 385: **Blackburn v Alabama**, 316 U.S. 199, 208-209."where the fundamental liberties of the person are claimed to have been infringed".

In this case, petitioner's claims are clearly in dispute when reviewed by the standard of the State Supreme Court opinion creates a conflicting response to petitioner filed briefs and oral arguments presented and argue on behalf of petitioner. Here, petitioner's issues can be clearly checked and demonstrated against the actual transcripts that the court opinion failed to point any record evidence where the issues was resolved at trial, and since petitioner has framed these issues for a evidentiary hearing this Court must accept petitioner claims as true, until a hearing demonstrate different.

## ISSUES PROPOSED TO BE ARGUED

### I. Violation of Constitutional Rights of the Fourteenth Amendments- Due Process and Equal Protection:

Petitioner states that this in custody instruction to the jury was done without any advance warning to him or knowledge by the petitioner or prior consent of the defendant or an opportunity to object by the Petitioner, in violation of his Due Process and Equal Protection rights, Rule of Evidence 803(7) and lack of a Waiver on the record again Pursuant to Rule of Evidence 803(7).

### II. Ineffective Assistance of Counsel: Violation of Constitution Rights of the Sixth Amendment:

**Strickland v Washington**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) held that for an alligation of ineffective assistance of counsel to prevail a) counsel's actions must be outside the range of professionally competent assistance and fail below an objective standard of reasonableness, and b) that this deficiency was serious and prejudicial and deprived the defendant of a fair trial because it had substantial and injurious influence in determining jury's verdict and but for the ineffective assistance of counsel there is a reasonable probability that the result of the proceeding would have been different.

**IV. Judicial Error:**

1. Cautionary instructions language in the statement was prejudicial and such error did deprvie the defendant of "basic Constitutional Rights".

2. Failed to give the defendant a **choice** to approve or disapprove the cautionary instructions as was his indicated practice.

3. There is no evidence of a pretrial conference with the judge and counsel discussing cautionary instructions or in custody admonition to the jury. Judge Krause put his testimony on the record, (see Exhibit 4, 9/29/03, T61-68.)

**V. Waiver:**

The Attorney General on 9/29/03 (see Exhibit 4, T60) argues that the defendant waived the issue by not objecting.

The defendant testified at the PCR (see Exhibit 4, 9/29/03,T35-46) and also co-defendant testified at the PCR hearing (see Exhibit 4, T 21-34.) Both testified that they did not know of their right. Therefore, there was no willing and knowing, voluntary, with full knowledge and understanding waiver.

## ARGUMENT

**I. Violation of the Fourteenth Amendment: Due Process and Equal Protection (and corresponding rights in the Federal or Rhode Island Constitution):**

Due Process and Equal protection are essential elements of a defendant case and his presentation of full and fair defense and is guaranteed by both State and Federal Constitutions; the defendant must be given reasonable opportunity to object to in custody instructions pursuant to **State v Fenner**, 503 A.2d 518 (RI 1986) and the court must clearly establish if a willing, knowing and voluntary waiver with full understanding existed prior to giving the jury the instruction purusant to **State v Bluitt**, 850 A.2d 83 (RI 2004), where the court vacated convictions because the record lacked any factual basis from it could conclude that the defendant knowingly and intelligently

waived his right. The court found that the trial justice erred in failing to make sure the record reflected the defendant's waiver of his right to counsel was knowing and intelligent...It further held that even if the trial justice had suspicious, the circumstances did not excuse the trial justice's failure to make sure that the record revealed that the defendant's waiver of his right to counsel was not merely voluntary, but also knowing and intelligent. The court's failure to do so constituted reversible error. Regarding petitioner, the trial court did not take steps to put on the record the defendant's choice and right to object and thereby avoid any possible bias, prejudice, that might affect a juror's decision making.

**State v Pugliese**, 362 A.2d 124 (RI 1976) addressed prejudicial effect on the jury. In **Pugliese**, a witness identified himself as a friend of the defendant's from the ACI. This statement was susceptible of inference that the defendant himself was or had been a convicted criminal, or that he was friendly with a particular criminal. It was determined that this was prejudicial to the defendant in light of the fact that there was a reasonable possibility that the witness' reference to the state correctional facility might have either influenced the decision on or detracted juror's attention from issue. The court held in **Pugliese** that the ends of justice would be best served if a jury (totally unaware of the Adult Correctional Institution and any reference to Pugliese in the ACI, even Pugliese's friend from the ACI Pugliese's conviction was vacated and remitted for a new trial.

The Petitioner was denied a fair trial in 1995 based on the trial justice's instruction to the jury that he was in custody for want of bail. It is significant, and it is undoubtedly clear to the jurors that the defendant was being held for an offense that was committed well over four (4) years prior to the trial. The petitioner states that this in custody instruction to the jury was given without any advance warning or knowledge by the petitioner or prior consent of the defendant or an opportunity to object by the Petitioner.

Conversely, in the prior two trial this in custody admonition was never given to the jurors. The defendant had no knowledge that the instruction was coming or that he was entitlted to object.

There is no documentation, produced either by Judge Krause, (see Exhibit, 4 T61-68) or the lawyers, James Ruggerio (see Exhbit 4, T16-20,) or Michael DiLauro, (see Exhibit 4, T5-12 and 46-55,) in this case that the defendant was advised of about these rights. As a matter of fact all the evidence, as noted in these transcript pages, shows the defendant's right was not protected: ie, no notes in the courts file, no transcript of the defendant's right being put on the record, **Frank v Frank**, 587 A.2d 340 (Pa. Super. 1991) "Record on appeal in all cases consists of original papers and exhibits filed in lower court, transcript of proceedings, if any, and a certified copy of docket entries and, "for purposes of appellate review, (what is not of record does not exist"). See, **Russell v Southard**, 53 U.S. 139 (1891) "this Court must affirm or reversal upon the case as it appears in the record, **New Haven Inclusion Cases**, 90 S.Ct. 2054. Here, no notes in either of the two attorneys files that the right was discussed in chambers or even explainted properly to the defendant, and testimony of the two attorneys that they may not have explained the right to their clients and the fact that the prior two trials the in custody instruction issue never came up.

**Van Cala v Getty**, 770 A.2d 851 (RI 2001) "On appeal plaintiff, again appearing pro se, asserted that he was denied his right to a jury trial. In addition, he alleged that defendant's attorney had engaged in an ex parte communication with the trial justice before the trial began. However, with the exception of this bald allegation, **plaintiff** had failed to point to any record evidence to support this claim. *** **Based on plaintiff's failure to point to any record evidence to support this alleged communication**, we conclude that this claim is devoid of merit.

The absence of proof that the defendant was informed is evidence that the petitioner was not advised per Rule of Evidence#803 Section 7. Further, if the judge could not remember, but claims as a habit he did give the choice to defendant, then the transcript would so indicate on the record that he gave the defendant the choice. For example, (see attached Exhibit 1 on transcript pages (4) and (5) the judge put on the record speaking to attorney Levy for defendant Mr. Roberts and also to attorney Bucci for Mr. Akinjobe that he intends

to tell the jury and the judge also asks the defendants if they are in agreement. None of this happened in petitioner case and the evidence, pursuant to Rule of Evidence#803 Section 7, is that no documentation exists in what normally would be recorded as noted above.

In **State v Fenner**, 503 A.2d 518 (RI 1986) the trial justice engaged in pretrial discussion with counsel for the parties, in chambers, and therein informed counsel of certain matters that she would impart to the jury, which included a proposed disclosure that the defendant was in custody. At that time the defense counsel raised no objection but after the admonition to the jury the defense counsel did raise an objection and requested the trial justice to pass the case because of what he termed the extremely prejudicial effects of the judge's comments.

The right to the presumption of innocence is a basic constitutional right. Anything that would be presented to the jury, before the presentation of evidence, which would create a bias and prejudice against the defendant is patently wrong . This logic applied in **Fenner** dictates that the defendant has the right to object and prevent the in custody admonition from being given to the jury. In this specific area, there was a total and complete breakdown of procedure and communication creating an extreme prejudice against petitioner. The defendant was not given the opportunity to exercise his right to object and was also never presented the right to waive his right to object and have it so recorded.

In **Doctor v State**, 865 A.2d at 1067 (RI 2005) "First he contends that his counsel, a highly respected veteran in the Public Defender's Office, failed to discuss a proposed Fenner instruction with him and failed to object to the instruction when it was given. He specifically alleges that his "counsel did not discuss with him and failed to object to the trial justice instructing the jury at the begining of the trial that he was in custody for lack of bail". In the case at bar, At the outset it is important to note that while it is not certain whether the trial justice conferred with counsel concerning the Fenner instruction, or whether counsel conferred with Doctor about the instruction. Id at 1068.

In the case at hand regarding petitioner, there was no prior objection, but there was no prior knowledge by the defendant. It

is presumed, without proof, that there was a conference in chambers and that an in custody admonition was discussed with counsel. It is further presumed without proof, that counsel informed the defendant and the defendant had prior knowledge of his right to object petitioner's counsel's testimony in the PCR (see Exhibit 4, T16-20) indicates he may not have and likely did not inform his client of his right to object, stating Fenner was total judicial discretion after the instruction was already given T35-42. In this case, the defense attorney did not discuss with the defendant an in custody admonition. There is nothing on the record/transcript. There is no proof. There is an absence of evidence in what would normally be a court entry see Exhibit 4, T62 line 9,) transcribed and available for transcript, and normal trial notes in the files of the attorneys, ie DiLauro T9.

There is proof in other cases, see attached (2) pages of a transcript of defendants Mr. Akinjobe and Mr. Robert (see Exhibit 5, T4,5,) where the court put on the record and it is available in the transcript that the right to object to the instruction was offered to the defendant and consented to by each of two defendants. This did not happen in petitioner's case. The Rules of Evidence#803 Section 7 clearly states that the lack of evidence, especially in the case of alleged habit, is lack of evidence and proof that the habit was not followed.

If the issue was never discussed in chambers then there is judicial error. If the issue was discussed and the lawyer never brought the issue to the defendant, then there is ineffective assistance of counsel. If the admonition was put on the record and the judge never inquired as to the defendant's choice, there is judicial error. Both defendants testified in the PCR that the issue was never raised in the two prior trials, (see Exhibit 4, 9/29/03, T22,2[illegible],31,33.) How would petitioner know about his choice? How would he know about his right to object?(see Exhibit 4, 9/29/03, T23,32) There is a total lack of evidence that petitioner waived his right. Petitioner clearly never waived his right to choose. To waive a right presumes the defendant knows about and was counseled about his right. Petitioner did not knowingly, willingly and voluntarily, with full knowledge and understanding, waive any right to choose.

In **Brewster v Bordenkircher**, 745 F.2d at 915 (1984) "The district judge, however, did not undertake to state for the record, and out of the presence of the jury, the reasons why the unusual, plainly visible security measure of shackling was to be employed. Nor did it appear that he provided counsel an opportunity to comment or to persuade him that the shackling measure were unnecessary." See, **United States v Samuel**, 431 F.2d 610 (1970)"the law was explicated by Judge Winter, now Chief Judge, in a manner which bears repeating, for it is pertinent and hardly susceptible of improvement:

> Basic to American jurisprudence is the principle that an accused, despite his preivous record or the nature of the pending charges, is presumed innocent until his guilt is established beyond a reasonable doubt by competent evidence. It follows that he is also entitled to the indicia of innocence. In the presence of the jury, he is ordinarily entitled to be relieved of handcuffs, or other unusual restraints, so as not to mark him as an obviously bad man or to suggest that the fact of his guilt is a foregone conclusion.

Clearly in petitioner case, the State Supreme Court made it clear that **Doctor v State**, 865 A.2d at 1069 (RI 2005) " The courtroom was small and crowed and several marshals were present in the room, some in very close proximity to defendants. It is highly likely that the jury knew that the two defendants were in custody, and it should have been no surprise to the jurors when the trial justice so informed them. **In our opinion,** counsel's objection to the instruction being given would not have changed the outcome in this case". Here the court's opinion clearly show that the jury had created their own impression before any evidence was presented, and since the trial judge had determine that there was no need for defendants imput before disclosing that petitioner was in custody.

The Rhode Island Supreme Court opinion reflects a concern for security that was not raised or agrued at trial nor was there ever a question as to the trial judge's or public defender's tenure, accolades, and character reffered to, in the courts opinion. Here, petitioner argument was sidetracked from the events that occured at trial. None of the above was ever an issue nor was it properly addressed or preserved for the record.

In **Thomas Oses v Commonwealth of Massachusetts**, 775 F. Supp 443 (D.Mass 1991) "Nor can Oses's exclusion from these conferences be justified as a security measure to be sure, Oses ultimately proved a demonstrative and disorderly participant in the trial proceedings. Well before the trial of this case, the SJC had warned State trial judges (how inadequate is procedure often followed in dealing with issue of security at trial). In **Commonwealth v Brown**, 305 N.E.2d 830; the SJC held that in absence of agreement among the prosecution,the defense, and the custodial authority regarding any unusual security measures that need to be taken during trial, **a judge who contemplates approving such measures should state his reasons(including recommendations received from the custodial authority) in the presence of counsel and defendant, and out of the presence of veniremen or jury, and provide an opportunity for counsel to make their objections know, but a record should be made**.

In petitioner's case, the trial judge never made any attempts to provide counsel with any opportunity to be heard or let the record reflect counsel position. Clearly, the Rhode Island Supreme Court opinion cannot be substituted as if those were the occurance of events. in **State v Fenner**, 503 A.2d 518 (RI 1986), the court outlined guidance for the trial courts Id at 522. First, it should be the obligation of a trial justice to inform counsel in advance if he or she intends to advise prospective jurors who have been selected to serve on a particular case that the defendant is in custody for the purpose of neutralizing any inference that might otherwise be formed. Second, in the event that counsel objects to such an admonition he or she has an obligation to inform the trial justice forthwith, before the admonitions have been given. Third, in such a situation, the trial justice should forego making such a statement to the jurors, but the defendant assumes the risk. Again, in Fenner, because of all the circumstances indicating protectionary steps to assure the defendant's right were preserved, it is logical to presume the defendant had prior knowledge. Not so, with petitioner, where the defendant's knowledge is presumed and no protective steps documented and the absence of habit exists. All the circumstances and evidence indicates that Fenner's steps to guide the trial judge were not followed, and petitioner rights were violated.

**FAILURE TO INFORM DEFENDANT AND PROTECT DEFENDANT'S RIGHTS:**

1. Attorney did not discuss judges proposed instruction
2. Attorney did not object to judge's cautionary instruction to jury at the begining of the trial indicating that the defendant was in custody.
3. Defendant's counsel failed to provide the defendant with with the opportunity and choice to either approve or disapprove cautionary instructions, (see Exhibit 4, T7, T23, T25, T9, T63, T30,).

Moreover , counsel for petitioner in the 1995 trial did not discuss with him the trial justice's proposed jury instruction, (see Exhibit 4, T17-21) and counsel failed to object to the trial justice instrcuting the jury at the begining of the trial, that the defendant was in custody.

Finally, that the defendant was not given a choice as to approve or disapprove of the instructions, or even an opportunity to object.

The Defendant alleges that his counsel's failure to act and properply discuss with him, and object to the instructions were ineffective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution and corresponding rights within the Rhode Island Constitution.

**IV. JUDICIAL ERROR:**

1. Cautionary instructions language in the statement was prejudicial to the defendant and against the defendants wishes and such error did deprive the defendant of "basic Constitutional Rights".
2. Judge failed to give the defendant a choice to approve or disapprove the cautionary instructions as was his indicated practice.

**State v Correra**, 430 A.2d 1251, 1257 (RI 1981) addresses the defendant's presence in front of the jury. A defendant may not be compelled to stand trial while dressed in prison garb, citing **Estelle v Williams**, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). This principle has been extended to incarcerated witnesses who are required to testify while dressed in prison attire, **State v Yates**, 174 Conn. 16, 19, 381 A.2d 536, 537 (1977). **Correra** further cites **Esteile v Williams** at 504-05, 96 S.Ct. at 1693, 48 L.Ed.2d at 131, "the constant reminder of the accused's condiction implicit in such distinctive, identifiable attire may affect a juror's judgment".

It is completely logical to follow to the next logical conclusion, as noted in **Correra** "likewise, the sight of handcuffs may have a significant effect on a juror's feelings about a defendant". See **Illinois v Allen**, 397 U.S. 337, 344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353, 359 (1970). Further, handcuffing a witness might influence a juror's judgment of credibility and further hurt the defendant insofar as the witness is to be associated with him. **Commonwealth v Brown**, 346 Mass. 471, 475, 305 N.E.2d 830, 834 (1973).

It is completely logical to follow to the next conclusion, that prison garb means that the defendant is incarcerated. Likewise, it is completely logical to follow to the next conclusion, that a defendant wearing handcuffs means that the defendant is incarcerated.

If the proceeding is followed to the next logical conclusion then telling the jury that the defendant is incarcerated will a) have a significant effect on a juror's feelings, and b) influence a juror's judgment credibility about the defendant and/or defendant's incarcerated witnesses. This is highly prejudicial to the defendant and his Constitutional rights are violated when he is not informed he has a choice whether to allow the jury to hear an in custody admonition.

**State v Pugliese**, 362 A.2d 124 (RI 1976) addressed prejudicial effect on the jury. In Pugliese, a witness identified himself as a friend of the defendant's from the ACI. This statement was susceptible of inference that the defendant himself was or had been a convicted criminal, or that he was friendly with a particular criminal. It was determined that this was prejudicial to the defendant in light of the fact that there was a reasonable possibility that the witness' reference to the state correctional facility might have either influenced the decision on or detracted juror's attention from the issue. The court held in Pugliese that the ends of justice would be best served if a jury (totally unaware of the Adult Correctional Institution and any reference to Pugliese in the ACI, even Pugliese's friend from the ACI. Pugliese conviction was vacated and remitted for a new trial.

The Rhode Island Supreme Court could not endorse Pugliese's trial justices belief that the average juror probebly realizes that all defendants charged with serious crimes are incarcerated at the

time of trial. The Supreme Court found that, for the most part, jurors are novices to the legal system and unsually this is their first opportunity to observe the judical process in operation. The court held that when a criminal case is on trial before a jury, every effort is to be made to insure that both a defendant on bail and an incarcerated defendant appear before the jury in an identical setting.

**V. Waiver:**

The Attorney General on 9/29/03, (see Exhibit 4, T60) argues that the defendant waived the issue by not objecting.

Petitioner testified at the PCR hearing that he did not know of his right. Therefore, there was no willing and knowing, voluntary with full knowledge and understanding waiver. In **State v Robert Bluitt**, 850 A.2d 83 (RI 2004) the court held in regard to a similar constit-utional right, a waiver of a right to counsel, "On balance, therefore, the trial justice's failure to probe more deeply into whether defendant knew that discharging Mr. Roy would be treated as a waiver of his right to counsel and that this waiver was knowing and intelligent, persuades us to sustain the defendant's appeal, especially when the record lacks any factual basis from which we can conclude that defendant knowingly and intelligently waived his right to counsel".

Lack of presence of a waiver, pursuant to Rule of Evidence 803 (7) supports that no waiver happened. The waiver logically takes place immediately or just before the admonition to the jury, which admonition is part of the record for petitioner.

**II. Ineffective Assistance of Counsel: Violation of the Sixth Amendment:**

**Strickland v Washington**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed .2d 674 (1984) held that for an allegation of ineffective assistance of counsel to prevail a) counsel's actions must be outside the range of professionally competent assistance, and fall below an objective standard of reasonableness, and b) that this deficiency was serious and prejudicial and deprived the defendant of a fair trial because it had substandtial and injurious influence in determining the jury's verdict and but for the ineffective assistance of counsel there is a reasonable probability that the result of the proceeding would have been different.

**FAILURE TO INVESTIGATE AND EXAMINE WITNESSES:**

The Defendant alleges that his counsel's failure to act, investigate and pursue examination of witnesses regarding evidence which was both exculpatory and material to eyewitness testimony was a failure in the exercise of due diligence and was ineffective assistance of counsel.

First, that counsel for the defendant did not pursue an investigation or examination regarding a material discrepancy, (see Exhibit 4, 9/29/03 T5, 26-29,) in related proceedings regarding this case, specifically, the trial of a juvenile respondent in Family Court, see In re: **Douglas L**, 625 A.2d 1357 (RI 1993) which indicates only 4 (four) passengers in the car, namely Nelson, Davis, Morris, and Perry vs. the trial of the defendants before Justice Giannini, see **State of Rhode Island v Jose Doctor and Alexis Doctor**, 644 A.2d 1287 (RI 1994), in which Morris an eyewitness states 6 (six) passengers were in the car, namely, Nelson, Ellis, Davis, Morris, Norman and Perry. Morris subsequently admits to shooting a gun as well, thus raising issues of self defense with the petitioner.

These trials differed in that the juvenile trial elicited testimony regarding only four persons in the car and the superior court trial elicited testimony that there were six persons in the same above stated car. The Defendant alleges that his counsel's failure to investigate and examine at trial was ineffective assistance of counsel. The Defendant's counsel failed to pursue investigating the discrepancy regarding conflicting testimony of a number of individuals in the victims vehicle and he failed to discover that Morris shot a gun at petitioner, and co-defendant, and Douglas Lewis, resulting in his failure to raise the issue of self defense on behalf of petitioner. If this was known by the State and not disclosed the issue of prosecutorial misconduct should have been raised. If this was unknown to the State and to defense counsel then it is newly discovered evidence.

The Defendant alleges that his counsel's failure to act, invest-igate and pursue examination of witnesses regarding evidence which was both exculpatory and material to eyewitness testimony, was a failure in the exercise of due diligence, and was ineffective assistance of counsel.

The trial justice violated my right to confront and cross examine my accusers and my right to a fair trial by cutting off at the threshold and totally precluding inquiries as to bias prejudice and motive for testifying see co-defendant brief agrued jointly (orally) with petitioner's trial appellate counsel, filed by the State as exhibit (3).

**FAILURE TO INVESTIGATE AND EXAMINE WITNESSES:**

The information regarding Rodney Perry was available and could have been presented at petitioner (1995) trial:

1. Rodney Perry had previously testified at Grand Jury identifying petitioner and codefendant as perpetrators. (see Exhibit 4, T75, line 17).

2. Rodney Perry, when called to testify in the first trial, claimed the 5th Amendment protection and remained silent.

3. Rodney Perry, did not testify in trial two or trial three.

4. Rodney Perry subsequently testified that he **testified falsely** in identifying petitioner and co-defendant as the perpetrators.

5. In petitioners application for post conviction relief, Rodney Perry testified he was unable to identify the perpetrators and could not see their faces.

Mr. Rodney Perry stated that when he previously testified in front of the Grand Jury, that he **testified falsely** in identifying that petitioner and co-defendant were the perpetrators. (see Exhibit 4, 9/29/03, T5.)

Finally, in a 9/29/03 hearing on the application for post-conviction relief where five people testified, Mr. Rodney Perry testified that he was **unable to identify the perpetrators because he could not see their faces**. (see Exhibit 4, T71, 72.)

In the case at bar, clearly counsel of record has a sworn duty to provide, and investigate this State's witness before trial as well as when his testimony reveals evidence of a exculpatory nature, counsel's decision not to investigate and pursue this evidence cannot be justified as a strategic decision.

This court has held that "[t]he decision to interview a potential witness is not a decision related to trial strategy. Rather, it is a decision related to adequate preparation for trial." **Chambers v Armontrout**, 907 F.2d 825, 828 (8th Cir.)(en banc), cert. denied,______U.S.______,111 S.Ct. 369, 112 L.Ed.2d 331 (1990). Reasonable performance of counsel includes an adequate investigation of the facts of the case, consideration of viable theories, and development of evidence to support those theories. Counsel has "a duty... to investigate all witnesses who allegedly possessed knowledge concerning [the defendant's] guilt or innocence." **Lawrence v Armontrout**, 900 F.2d 127, 130 (8th Cir. 1990). We have stated that "[i]t is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty.

In this case at bar, petitioner should not be held responsible for his attorney's actions for reformulating his issues. See **Chacon v Wood**, 36 F.3d at 1467 (9th Cir. 1994) " we must address the merits of the district court's conclusion that **Chacon** failed to exhaust state remedies on his due process claim." (We conclude that the district court erred. As we recently explained, "[t]o satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim to the state courts." **Henry v Estelle**, 993 F.2d 1423, 1425 (9th Cir. 1993) (citing **Picard v Connor**, 404 U.S. 270, 277-78, 92 S.Ct. 509, 513-14, 30 L.Ed.2d 438 (1971). " A habeas petitioner may, however, reformulate some-what the claims made in state court; exhaustion requires only that the substance of the federal claim be fairly presented." **Tamapua v Shimoda**, 796 F.2d 261, 262 (9th Cir. 1986)(emphasis added). Moreover, the petitioner need not have even identified any specific constitutional provision before the state court. So long as a defendant presents the state courts "with all the operative facts giving rise to the asserted constitutional principle." we have held that [i]t would be unnecessary for him to cite to the state court book and verse on the federal constitution." **Daugharty v Gladden**, 257 F.2d 750, 758 (9th Cir. 1958).

## CONCLUSION

For the reason described above,

1) that petitioner constitutional rights of Due Process and Equal Protection were violated, because his right to know about and object or consent and waive his right to the in custody instruction was not adhered to and protected;

2) that petitioner attorney did not inform him to his right to object to the in custody instruction and only spoke to him about the issue after the instruction was already given and the defendant only became aware of his right after he did his own research on the matter;

3) that petitioner's counsel's failure to act, investigate and pursue examination of witnesses regarding evidence which was both exculpatory and material to eyewitness testimony, was a failure in the exercise of due diligence, and was ineffective assistance of counsel.

WHEREFORE, petitioner prays that this Court grant the relief sought herein by providing a evidentiary hearing or a new trial.

Sincerely submitted,

Alexis Doctor

Alexis Doctor, pro se
Maximum Security
P.O. Box 8273
Cranston, RI 02920

## CERTIFICATION

I, the undersigned, hereby swear and certify that I have mailed a true and correct copy of the within Motion of Petitioner's Objection to the State's answer/and memorandum in support of writ: To the Attorney General Office at 150 South Main Street, Providence, RI 02903, on this______day of_______________2005: To Ms. Aaron L. Weisman, #4438

Alexis Doctor