**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**ALEXIS DOCTOR**

**v.** **C. A. No. 05-424 ML**

**A.T. WALL**, Director, Rhode
Island Department of Corrections

## MEMORANDUM AND ORDER

Mary M. Lisi, Chief United States District Judge

Alexis Doctor ("Doctor" or "petitioner"), *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, Doctor's petition is denied and this matter is dismissed.

### Background and Travel

On August 11, 1990, a vehicle containing six passengers stopped in front of Sonny and Dennis' Nightclub, located on the corner of Eddy and Globe Streets in Providence. When the vehicle stopped, three hooded individuals, carrying guns, approached. These three individuals opened fire, sending a volley of bullets into the vehicle. After the gunmen ceased shooting, the driver of the vehicle drove to nearby Rhode Island Hospital. Willie Davis, one of the passengers, was pronounced dead due to a gunshot wound to the head. Another passenger was treated for a bullet wound to his shoulder.

Witnesses identified Alexis Doctor, his brother Jose, and a juvenile as the three gunmen. The state subsequently charged Alexis Doctor and his brother Jose with murder, conspiracy with an

unindicted juvenile to commit murder, and two counts of assault with intent to commit murder.

In February 1992, a jury trial commenced but ended in a mistrial after one of the state's witnesses invoked his Fifth Amendment privilege against self incrimination in front of the jury. In March 1992, a second jury trial resulted in the conviction of both brothers. The Rhode Island Supreme Court later overturned those convictions. State v. Doctor, 644 A.2d 1287 (R.I. 1994). In January 1995, a third jury trial commenced, with the jury returning a guilty verdict on all counts against both brothers. Each was sentenced to life imprisonment on the murder charge. On the conspiracy charge, each received a ten year suspended sentence with ten years probation. On the assault charge, each received a five year suspended sentence with five years probation.

Doctor thereafter appealed his conviction to the Rhode Island Supreme Court claiming that the trial judge erred when he limited Doctor's cross examination of one of the state's witnesses and by not granting a new trial due to a witness's recantation of his trial testimony. State v. Doctor, 690 A.2d 321 (R.I. 1997). The Rhode Island Supreme Court rejected the claims and affirmed his conviction. Id.

Petitioner thereafter filed a motion for post conviction relief in the Rhode Island Superior Court. He first claimed that his trial counsel was ineffective because he failed to discuss with him and object to a proposed instruction pursuant to State v. Fenner, 503 A.2d 518 (R.I. 1986). Second, petitioner alleged that trial counsel was ineffective because he failed to pursue a discrepancy in the number of occupants in the victims' vehicle. Finally, Doctor asserted that he was entitled to a new trial based upon newly discovered evidence. After a hearing, the hearing justice, who was also the trial justice, rejected his claims and denied the petition. The Rhode Island Supreme Court affirmed the denial of relief. Doctor v. State, 865 A.2d 1064 (R.I. 2005).

Doctor now has filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, Doctor asserts the following claims: (1) the trial judge interfered with his right to confront and cross-examine a witness; (2) trial counsel was ineffective because counsel failed to pursue a discrepancy regarding the number of occupants in the vehicle; (3) trial counsel was ineffective because he failed to discuss with him and object to an instruction pursuant to State v. Fenner, 503 A.2d 518; (4) trial counsel was ineffective because counsel failed to investigate other potential witnesses to present at his trial; and (5) trial counsel was ineffective because he failed to pursue a self-defense theory. The Attorney General of the State of Rhode Island, on behalf of the Respondent, A.T. Wall, filed a motion to dismiss the petition. Doctor objected thereto.

## Discussion

### a. Unexhausted Claims

As a preliminary matter, the Respondent has moved to delete claims 4 and 5 from Doctor's Section 2254 petition since those claims are unexhausted. See Rhines v. Weber, 544 U.S. 269, 278 (2005)(permitting a habeas petitioner to delete unexhausted claims from the petition and permitting the district court to proceed with only the exhausted claims). In his Objection, Doctor consented to delete the unexhausted claims. See Petitioner's Objection to the State's Answer, Dckt # 6, at 1-3. Accordingly, the Court shall consider the remaining three claims.

### b. Habeas Corpus Standard

With respect to the remaining exhausted claims, the appropriate standard for this Court to consider those claims is set forth in the Anti-terrorism and Effective Death Penalty Act of 1996, P.L. No. 104-208, 110 Stat. 3009-546 ("AEDPA"). AEDPA significantly limits the scope of federal

habeas review. AEDPA precludes the granting of habeas relief to a state prisoner unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A decision is "contrary to" federal law if the state court applies a legal principle different from the governing principal set forth in Supreme Court cases, or if the state court decides the case differently from a Supreme Court case on materially indistinguishable facts. Bell v. Cone, 535 U.S. 685, 694 (2002)(citing Williams v. Taylor, 529 U.S. 362, 405 (2000)).

To hold that a state court's decision is an "unreasonable application" of clearly established federal law, the federal habeas court must find that "the state court correctly identifie[d] the governing legal principle from [Supreme Court] decisions but unreasonably applie[d] it to the facts of the particular case." Bell, 535 U.S. at 694. In making this determination, a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. The Court should be mindful that in order to grant habeas relief, the state court decision must be objectively unreasonable as opposed to merely incorrect. Id. at 411 ("A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."). Finally, the Court's focus "is not how well reasoned the state court decision is, but whether the outcome is reasonable." Hurtado v. Tucker, 245 F.3d 7, 19 (1st Cir. 2001), cert. denied, 534 U.S. 925 (2001).

AEDPA also provides that the federal habeas court shall presume that the state court's determination of factual issues is correct and petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Mindful of these

standards, the Court now turns to the exhausted claims asserted in Doctor's habeas petition.

1. Limitation on Cross-examination

As his first basis for federal habeas relief, petitioner contends that the trial justice interfered with his right to confront and cross-examine a witness, in violation of the Sixth Amendment's Confrontation Clause. The factual basis of this claim is as follows:

At trial, defense counsel sought to cross examine a witness with regard to a civil claim filed by the victim's family pursuant to Criminal Injuries Compensation Act, R.I. Gen. Laws 25-12-1.1 et. seq. ("Act"). Doctor, 690 A.2d at 326. Defense counsel asked the witness whether the witness thought that a conviction was a necessary prerequisite to recover compensation pursuant to the Act. Id. The witness, however, denied any knowledge of the civil claim filed by the victim's family pursuant to the Act, testifying "I don't know." Id. at 327. When defense counsel further sought to explore the witness' knowledge of the civil claim, the trial justice terminated defense counsel's questioning on that point because the witness had responded that she had no knowledge of the civil claim. Id.

The Confrontation Clause "provides two types of protection for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross -examination." Pennsylvania v. Ritchie, 480 U.S. 39, 51 (1987). Here, the right at issue is the petitioner's right to cross-examine. Of particular importance to this case, the Supreme Court has recognized that the exposure of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986). When there is evidence of bias, a defendant has a constitutional right to cross-examine a witness about the issue. Id. That right, however, is not without limitation.

> It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross examination based upon concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

Van Arsdall, 475 U.S. at 679.

The Rhode Island Supreme Court carefully analyzed this claim in petitioner's direct appeal, relying upon State v. Veluzat, 578 A.2d 93, 94 (R.I. 1990) and State v. Anthony, 422 A.2d 921, 924 (R.I. 1980). The state supreme court determined that "the scope of cross-examination, even for the purpose of exposing bias [or motive], is not unlimited, " see Doctor, 690 A.2d at 327 (citing Veluzat, 578 A.2d at 94), and that the trial justice in Doctor's case permitted reasonable latitude on cross examination, including an opportunity for the defendant to establish or reveal possible bias, prejudice, or ulterior motives. Doctor, at 327. Moreover, the Rhode Island Supreme Court found that no offer of proof was offered by defense counsel with respect to the witness and the subject matter, see id. at 327-28, and noted that "a fishing expedition on cross-examination may properly be brought to a halt when it becomes obvious that the pond is devoid of fish." Id. at 328 (internal citation omitted).

The Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. Van Arsdall, 475 U.S. at 679. Here, the witness was available for cross-examination and testified that she had no knowledge of the civil claim. The trial justice in this case terminated the cross-examination of the witness on that subject matter based upon the witness' answer. No offer of proof was proffered by defense counsel. Thus, it is abundantly clear that the trial justice did not abuse his

discretion in limiting defense counsel from further cross-examination of the witness about a matter of which she had no knowledge. The Rhode Island Supreme Court's decision on this claim is neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

2. Ineffective Assistance of Counsel Claims

Next, petitioner claims that his trial counsel was ineffective under the Sixth Amendment. Specifically, Doctor claims that counsel was ineffective because (A) counsel did not pursue a discrepancy in the number of occupants in the victims' vehicle, and (B) counsel failed to discuss with him and object to a Fenner instruction.

A criminal defendant claiming a Sixth Amendment ineffective assistance of counsel violation must establish that (1) that counsel's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Under the first prong of Strickland, there is a "strong presumption" that counsel's strategy and tactics fall "within the range of reasonable professional assistance," and courts should avoid second guessing counsel's performance with the use of hindsight. Id. at 689. It is only where, given the facts known at the time, counsel's "choice was so patently unreasonable that no competent attorney would have made it," that the first prong is satisfied. Id.

Under the second prong, not all errors by counsel are sufficient to meet the standard of a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 693-94. Rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Smiley v. Maloney, 422 F.3d 17, 20 (1st Cir. 2005). This is a "highly demanding" and "heavy burden." Williams v. Taylor, 529 U.S. 362, 393(2000). A defendant's

failure to satisfy one prong of the Strickland analysis obviates the need for the court to consider the remaining prong. Strickland, 466 U.S. at 697.

When analyzing Doctor's ineffective assistance of counsel claims, the Rhode Island Supreme Court utilized the standards articulated in Strickland. See Doctor, 865 A.2d at 1068. Thus, that tribunal's decision on Doctor's ineffective assistance of counsel claims is not "contrary to" federal law. See Bell, 535 U.S. at 694 (citing Williams v. Taylor, 529 U.S. at 405 (a decision is "contrary to" federal law if the state court applies a legal principle different from the governing principal set forth in Supreme Court cases, or if the state court decides the case differently from a Supreme Court case on materially indistinguishable facts)). Doctor will only be entitled to federal habeas relief if the state court decision is an "unreasonable application" of federal law.

A. Number of Occupants in the Vehicle

As his first ineffective assistance of counsel claim, Doctor claims that his trial counsel was deficient because he failed to pursue a discrepancy regarding the number of occupants in the victims' vehicle. In the juvenile's Family Court proceeding, testimony was proffered that there were only four individuals in the vehicle. Doctor, 865 A.2d at 1069. At Doctor's trial, however, the testimony revealed that there were six people in the vehicle. Id.

In analyzing this claim, the state supreme court found that defense counsel's decision not to pursue a discrepancy concerning the number of people in the car "fell within that acceptable range of latitude afforded defense counsel to determine trial strategy and therefore was not unreasonable," and that Doctor failed to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Doctor, 865 A.2d at 1069 (internal quotations omitted). Additionally, the state supreme court noted that the Family Court proceedings resulted in

the juvenile being convicted with the testimony indicating that only four occupants were in the vehicle, and any questioning advanced by counsel on this point would have made no difference in the outcome. Id.

The state supreme court's decision on this claim is not an unreasonable application of federal law. Trial counsel's decision not to pursue a discrepancy concerning the number of people in the vehicle clearly falls within the acceptable range of latitude afforded defense counsel to determine trial strategy. See Strickland, 466 U.S. at 689; see also Horton v. Allen, 370 F.3d 75, 86-87 (1st Cir. 2004)(state court reasonably applied Strickland when it determined that counsel was not ineffective for failing to call several witnesses; upholding denial of habeas petition).

Moreover, Doctor failed to demonstrate that the state supreme court unreasonably concluded that no prejudice resulted from counsel's failure to pursue this discrepancy. See Dugas v. Coplan, 428 F.3d 317, 334 (1st Cir. 2005) (prejudice occurs when there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different). Indeed, the juvenile was convicted in the Family Court with the testimony indicating that there were only four occupants in the vehicle.

B. Failure to Object to a Fenner Instruction

Next, Doctor claims that his trial counsel was ineffective for failing to discuss with him and object to an instruction pursuant to State v. Fenner, 503 A.2d 518, 522 (R.I. 1986)(holding that it is the obligation of the trial justice to inform counsel in advance if he or she intends to advise prospective jurors or jurors who have been selected to serve that the defendant is in custody for the purpose of neutralizing any inference that may be formed).

A hearing was conducted on this issue in the state courts during Doctor's post-conviction

proceedings. Doctor, 865 A.2d at 1068. The testimony presented at the hearing demonstrated that counsel for both Doctor and his brother could not remember with specificity the circumstances concerning the Fenner instruction, but both counsel testified that it was their normal practice to confer with their clients prior to the instruction and that they would have objected if asked to do so by their clients. Id. Moreover, the hearing justice, who also presided at the trial, stated that it was his normal practice to consult with counsel before giving a Fenner instruction and noted that he could "not remember ever gratuitously offering such an instruction without notifying counsel that [he] intended to do so." Id. The only evidence to the contrary was Doctor's assertion that neither the trial justice nor counsel conferred with him about the Fenner instruction. Id. The hearing justice, however, found Doctor's testimony not credible. Id. at n. 5.

Moreover, assuming *arguendo* that counsel neglected to discuss with Doctor a Fenner instruction, the state supreme court found that Doctor was not prejudiced. The Court noted that the courtroom where the trial was conducted was small and crowded and several marshals were present, some in very close proximity to the defendants. Id. 1068-69. The Court found that even if counsel objected to the instruction, the outcome of the case would be the same. Id.

The state supreme court's decision on this issue is not unreasonable. First, the state court credited trial counsels' testimony and the trial justice's statement on the issue concerning the events. Facts found by the state courts are accorded great deference in federal habeas corpus proceedings. Indeed, a federal habeas court must presume that the state court's determination of factual issues is correct and petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Nothing has been presented by the petitioner which rebuts this presumption by clear and convincing evidence.

Second, even assuming that counsel failed to confer with Doctor, and consequently, lodge an objection at his request, Doctor failed to provide any basis to conclude that the result of the proceedings would have been different. See Strickland, 466 U.S. at 687 ("counsel's errors must have been so serious as to deprive the defendant a fair trial..."). Accordingly, the state supreme court's decision on this claim is not an unreasonable application of U.S. Supreme Court precedent.

Conclusion

For the reasons stated above, Alexis Doctor's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied and dismissed.

Mary M. Lisi
Chief United States District Judge
March 28, 2007